UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| GRANITE ROCK COMPANY,<br><br>            Plaintiff,<br>   v.<br>TEAMSTERS UNION LOCAL NO. 890 AND TEAMSTERS UNION LOCAL NO. 912,<br><br>            Defendant(s).<br>_____/ | No. C 12-02974 MEJ<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (DKT. NO. 15)** |

## INTRODUCTION

On July 23, 2012, Plaintiff Granite Rock Company filed its First Amended Complaint ("FAC") seeking an order to compel Defendants, Teamsters Union Local No. 890 and Teamsters Union Local No. 912, to arbitrate certain grievances under Section 301 of the Labor Management Relations Act ("LMRA").[1] Dkt. No. 12, FAC at ¶¶8, 26. Specifically, Plaintiff seeks an arbitrated resolution to its allegation that Defendants violated the "no-strike provision" in the parties' 2003-2007 collective bargaining agreement.[2] *Id.* at ¶26. Now before the Court is Defendants' Motion to Dismiss Plaintiff's FAC on the grounds that it fails to state a claim. Having considered the relevant legal authority and the parties' arguments, the Court hereby GRANTS Defendants' Motion for the reasons explained below.

---

[1] Plaintiff initiated this action to compel arbitration on June 8, 2012. Dkt. No. 1. Defendants moved to dismiss the Complaint on July 9, 2012; this Motion was denied as moot when Plaintiff voluntarily amended its pleading and filed its FAC. Dkt. Nos. 7 and 14.

[2] The parties' 2003-2007 collective bargaining agreement will subsequently be referenced as CBA 1. Dkt. No. 2, Declaration of Bruce Woolpert ("Woolpert Decl."), Ex. B.

# BACKGROUND

Plaintiff is a California corporation engaged in interstate commerce and an "employer" within the meaning of Sections 2(6), 2(7), and 301 of the LMRA. FAC at ¶1. It produces and supplies concrete and other building materials to construction contractors throughout the San Francisco and Monterey Bay Areas. *Id.* Defendants are local labor unions covering employee warehousemen and drivers at Plaintiff's concrete and building material facilities in Monterey and Santa Cruz Counties. *Id.* at ¶¶2, 3. Plaintiff and Defendants have been parties to a series of collective bargaining agreements governing their employment relationship. *Id.* at ¶5; CBA 1; Woolpert Decl., Ex. A (the 2007-2012 collective bargaining agreement).[3]

In June 2003, Plaintiff and Defendants entered into CBA 1, which governed their employment relationship from June 1, 2003 to May 31, 2007. CBA 1 at §29. CBA 1 contains two sections relevant to this dispute. First, Section 7 (titled as Strikes and Lockouts) states in relevant part that "[t]here will be no strikes, including unfair labor practices strikes, sympathy strikes, slowdowns, stoppage of work or picketing by the Union or employees . . . during the term of this agreement[.]" (the "no-strike clause"). *Id.* at §7. Second, Section 25 (titled as Board of Adjustment), which discusses the grievance procedure, provides generally that if the parties are unable to resolve the dispute themselves, or with the board of adjustment, the dispute will be submitted to arbitration upon request of either party. *Id.* at §25.

In June 2004, another local union ("Local 287"), went on strike after a series of failed negotiations with Plaintiff to renew their collective bargaining agreement. FAC at ¶8. Local 287 established picket lines at Plaintiff's Watsonville, Santa Cruz, Seaside, and Salinas facilities. *Id.* at ¶9. Plaintiff notified Defendants that their unions' participation in the strike would constitute a violation of CBA 1, and any refusal to resume work would be a direct breach of their responsibilities under the parties' agreement. Woolpert Decl., Exhibit C at 1. Defendants refused to comply with Plaintiff's instructions and their members joined Local 287 in the strike. *Id.* at 2; FAC at ¶9. As a

---

[3] The parties' 2007-2012 collective bargaining agreement will subsequently be referenced as CBA 2.

result, Plaintiff filed grievances against Defendants charging them with violating the no-strike clause of the then-in-effect CBA 1. FAC at ¶9.

In 2006, Plaintiff initiated a lawsuit against Local 287 for strike-related damages, but did not file a complaint against Defendants at that time. *Id.* at ¶¶3, 12. Plaintiff alleges that it and Defendants agreed to hold Plaintiff's 2004 grievances against Defendants "in abeyance" while litigation against Local 287 — which dealt with similar issues — was pursued in federal court. *Id.* at ¶12. The action against Local 287 lasted several years and included the United States Supreme Court granting certiori. *Id.* at ¶12.

Meanwhile, Plaintiff and Defendants entered into a subsequent collective bargaining agreement. *Id.* at ¶16. CBA 2 was executed in June 2011 and applied retroactively from June 7, 2007 to May 31, 2012. CBA 2 at §29. Recently, the parties further agreed to a one-year extension for CBA 2. FAC at ¶5.

CBA 2 contains a no-strike clause, an integration clause, and a procedure for grievances filed on behalf of either party. CBA 2 at §§7, 24, 25. The CBA 2 no-strike clause is identical to the no-strike clause in CBA 1. *Id.* at §7. The integration clause provides:

> It is agreed and understood between the parties hereto that this Agreement contains all the covenants, stipulations, and provisions agreed upon by the parties hereto, that no agent, or representative of either party has authority to make, and that said parties shall not be bound by nor liable for any statement, representation, promise, inducement, or agreement, not set forth herein; any provision in the working rules of any Union, a party hereto, with reference to the relations between Employer and its employees not expressly reaffirmed in this Agreement, shall be deemed to be waived, and any such rules or regulations which may be hereafter adopted by any Union shall have no application to work hereunder.

*Id.* at §24. The grievance procedure provides in relevant part:

> Any alleged violations of the specific terms of this Agreement which cannot be settled informally shall be referred to representatives of the Employer and the Union for settlement. Every effort shall be made to resolve differences at this level. Any other dispute between the parties shall be subject to this grievance procedure only by unequivocal written agreement between the parties.

*Id.* at §25.

Plaintiff's FAC to compel arbitration alleges that it sought and bargained for terms reflecting the active status of the 2004 no-strike grievances against Defendants to be included in

3

CBA 2. FAC at ¶16. Plaintiff cites to extrinsic evidence and negotiation history in support of its allegations, including several letters from Plaintiff's company officials. *Id.* at ¶¶16-23.

On August 23, 2012, Defendants moved to dismiss Plaintiff's FAC. Dkt. No. 15, Motion. Defendants argue that Plaintiff's FAC lacks a cognizable legal theory because CBA 1, under which Plaintiff seeks arbitration, has expired. And CBA 2 does not provide for arbitration of Plaintiff's specific grievances because they arose under CBA 1, which was voided by CBA 2, a fully integrated collective bargaining agreement. According to Defendants, a fully integrated agreement supersedes any prior agreements, the CBA 2 is a fully integrated contract, and there is no ambiguity as to the contract to permit the court to look at extrinsic evidence.

On September 13, 2012, Plaintiff opposed Defendants' Motion, arguing that its right to arbitrate the 2004 grievances survives CBA 1's expiration. Dkt. No. 23, Opp. In the alternative, Plaintiff argues that it is equally entitled to arbitrate the 2004 grievances under CBA 2 since such grievances fall within that agreement's arbitration clause. On September 20, 2012, Defendants replied to Plaintiff's Opposition, reiterating that Plaintiff is not entitled to arbitration under either CBA 1 or CBA 2. Dkt. No. 24, Reply. This is the issue consequently before the Court: whether Plaintiff is entitled to compel Defendants to arbitrate its 2004 no-strike grievances under either of the parties' collective bargaining agreements.

**ANALYSIS**

The Court begins its analysis by setting out the governing principles of arbitration disputes such as the one presented here. Arbitration "is a matter of contract," and a party cannot be required to submit a dispute to arbitration unless it has agreed to do so. *AT&T Techs. Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 648-49 (1986) ("This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration."). The question of whether the parties have agreed to arbitrate is to be decided by the court and not the arbitrator, unless the parties have clearly and unmistakably provided otherwise. *Id.* If a contract between the parties contains an arbitration clause, the court should enforce that clause "unless it may be said with positive assurance that the arbitration clause is

4

not susceptible of an interpretation that covers the asserted dispute." *Id.* at 650. Any "[d]oubts should be resolved in favor of coverage." *Id.*

With these principles in mind, the Court turns to Plaintiff's arguments in support of its position that it is entitled to arbitrate the 2004 no-strike grievances. Two of these arguments do not warrant much discussion. First, Plaintiff contends that Defendants' Motion asserts procedural objections to arbitration and that such objections should be decided by the actual arbitrator. Opp. at 9 ("Because the subject matter of the parties' dispute, strikes, is covered by the Arbitration clause of their collective bargaining agreement, any other procedural issues "which grow out of the dispute and bear on its final disposition should be left to the arbitrator.") (internal quotations and citations omitted). This argument is misplaced. As mentioned in the paragraph above, "[w]hether or not a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined *by the court*, and a party cannot be forced to 'arbitrate the arbitrability question.'" *Litton Fin. Printing Div. v. N.L.R.B.*, 501 U.S. 190, 208 (citing *AT&T*, 475 U.S. at 651) (emphasis added); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("Thus, a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide."). Here, Defendants' objections are not affirmative defenses or procedural arguments that grow out of the dispute; rather, they go to the preliminary issue of whether the parties agreed to arbitrate this issue. It is therefore up to this Court — not an arbitrator — to decide whether Plaintiff is entitled to arbitration.

Second, Plaintiff contends that CBA 2 is ambiguous, and the Court must therefore review the extrinsic evidence submitted by Plaintiff (which would essentially require the Court to ignore the integration clause in CBA 2). Opp. at 13-16. The Court cannot do so. CBA 2's Section 24 — which is entitled "Entire Agreement" — explicitly sets forth that CBA 2 encompasses the parties' entire contract with each other, and they will "not be bound by nor liable for any statement, representation, promise, inducement, or agreement" not contained in CBA 2. CBA 2 at §24. The

1  Court finds that this is an express and unambiguous integration clause.[4]  Accordingly, "because the
2  parties have agreed that the written instrument is the exclusive and final embodiment of their
3  contract, antecedent understandings and parol evidence are not admissible to alter its terms."
4  *Golden Gate Acceptance Corp. v. Gen. Motors Corp.*, 597 F.2d 676, 680 (9th Cir. 1979); *Computer*
5  *Place, Inc. v. Hewlett-Packard Co.*, 607 F.Supp. 822, 834-35 (N.D. Cal. 1984).  For this reason, the
6  Court does not consider any of the extrinsic evidence submitted by Plaintiff.[5]

7  The Court moves on to the crux of this dispute between the parties and first evaluates
8  whether Plaintiff is entitled to arbitrate the 2004 grievances under CBA 1 and then under CBA 2.
9  With respect to CBA 1, Plaintiff argues that this agreement's expiration did not automatically
10 terminate the arbitration provision.  Opp. at 7 ("For like reasons, the right to arbitrate a dispute
11 arising under an expired agreement does not automatically terminate when the parties subsequently
12 enter a new agreement.").  Defendants, however, do not contend that Plaintiff's rights under CBA 1
13 were automatically terminated just because a new agreement was signed at a later time.  Instead,
14 Defendants correctly point out the black letter law on this issue: when there is a dispute over an

---

[4] In support of its ambiguity argument, Plaintiff points out that CBA 2's Section 25 provides that an arbitrator may interpret the express written terms of the agreement by utilizing "past arbitration awards, bargaining history, prior grievances and their resolutions, and past practices." Opp. at 13.  This, according to Plaintiff, creates ambiguity because it is in direct contradiction to the integration clause, which prohibits any reference to prior agreements.  The Court disagrees.  Section 25 does not change the scope of which agreements are contained within CBA 2 and which disputes should be arbitrated.  Rather, Section 25 only provides that once there is a dispute that falls within the scope of CBA 2's arbitration clause, past history can be used to help interpret express terms of the agreement.  This creates no ambiguity and does not change that CBA 2 contains an express integration clause.

[5] *See also Grey v. American Mgmt. Servs.*, 204 Cal.App.4th 803, 807 (2012) ("The court determines whether the parties intended the contract to be a final and complete expression of their agreement.  The crucial issue in determining whether there has been an integration is whether the parties intended their writing to serve as the exclusive embodiment of their agreement.  The instrument itself may help to resolve that issue.  The existence of an integration clause is a key factor in divining that intent.  This type of clause has been held conclusive on the issue of integration, so that parol evidence to show that the parties did not intend the writing to constitute the sole agreement will be excluded.") (internal quotations and citations omitted).

6

arbitration clause from an expired agreement, presumptions in favor of arbitrability remain *unless* they are negated expressly or by clear implication. *Nolde Bros., Inc. v. Bakery Workers*, 430 U.S. 243, 255 (1977) (emphasis added); *United Parcel Serv. v. Union De Tronquistas De Puerto Rico* ("*UPS*"), 426 F.3d 470, 472 (2005) ("In *Litton,* the Supreme Court confirmed that a presumption exists in favor of postexpiration arbitration of matters unless negated expressly or by clear implication in the collective bargaining agreement.") (internal quotations and citations omitted). Citing to *Nolde* and *Litton*, Defendants argue that the parties expressly negated Plaintiff's right to arbitrate the 2004 grievances under CBA 1 when they executed CBA 2, which contained an explicit integration clause that provided CBA 2 constituted the parties' entire agreement and CBA 1 was no longer valid.

The Court agrees with Defendants' position. CBA 2's integration clause, as discussed previously, specifically provides that the parties will not be bound by any previous contracts, and that CBA 2 constitutes the entire agreement of the parties. CBA 2 at §24. The Court finds that this direct language in Section 24 extinguishes Plaintiff's arbitration rights under CBA 1, as such expiration of rights was contemplated by *Nolde* and *Litton*. Based on this, Plaintiff cannot base its request to compel arbitration on CBA 1, an agreement that this Court finds was superseded by CBA 2.

This view is supported by case law. In *GCIU Employer Retirement Fund v. Chicago Tribune Company* — a case that was discussed in Defendants' Motion but never mentioned by Plaintiff in its Opposition — the Seventh Circuit held that an employer was no longer required to make pension payments pursuant to an obligation under the parties' 1979 agreement since it was superseded by the parties' 1980 collective bargaining agreement, which contained an integration clause. 66 F.3d 862, 865 (1995) ("We conclude that since the CBA is a later contract which specifically terminated the earlier agreement, there can be no additional duty to contribute pursuant to that earlier contribution agreement."); *see also id.* at 867 ("The 1980 CBA between the Union and the Tribune contained an integration clause which provided in clear and unambiguous terms that the 1980 CBA constituted the entire agreement between the parties. The 1980 CBA thereby superseded the 1979 Subscription

1 Agreement."). In the same manner, CBA 2's express integration clause here terminated CBA 1 and
2 resulted in its arbitration clause no longer being available to Plaintiff.

3 In *Grey*, a California Appellate Court analyzed a similar question when it examined whether
4 an arbitration provision in an employment contract that contained an integration clause superseded a
5 previous agreement's arbitration provision that was signed by the employee when he submitted his
6 application. 204 Cal.App.4th at 805-06. The *Grey* court held that the later contract did supercede
7 the previous agreement, explaining that because "the [employment] contract says it is the entire
8 agreement, common sense dictates that it supersedes other prior agreements related to Grey's
9 employment." *Id.* at 807. Plaintiff attempts to distinguish *Grey* by arguing that the case did not deal
10 with collective bargaining issues, and the integration clause in that employment contract was much
11 stronger than here since it specifically stated that all prior agreements were "superseded." Opp. at
12 16.

13 Plaintiff is correct regarding both of these slight differences. But this still does not persuade
14 the Court to apply *Grey*'s rationale to this matter. First, as both parties acknowledged at oral
15 argument, not many courts have directly addressed the specific issues presented here. This therefore
16 requires the Court to look outside of collective bargaining cases for guidance, and the question
17 examined in *Grey* is analogous to some of the issues in this case. Second, the Court agrees that it
18 would have been more clear if Defendants specifically wrote in the integration clause that CBA 2
19 supersedes CBA 1. However, that does not mean that CBA 2's integration clause is rendered
20 meaningless and should be completely ignored. As both Plaintiff and Defendants argue in their
21 briefs, they are sophisticated parties that have negotiated collective bargaining agreements on many
22 prior occasions. Having such experience, the Court cannot find that the parties did not understand
23 that Section 24 of CBA 2 — the "Entire Agreement" clause — was not intended to supersede other
24 agreements when it specifically stated that CBA 2 would be the only contract between the parties,
25 and they would not be bound by any prior or contemporaneous agreements not contained in CBA 2
26 (i.e., as Defendants state in their briefs, the integration clause was "wiping the slate clean" between
27 the parties). *See* Motion at 5.
28

8

Moreover, many of the decisions relied on by Plaintiff in its Opposition are distinguishable because in those cases the subsequent agreement between the parties did not have an express integration clause as CBA 2 did here. For instance, Plaintiff argues that the Court should follow the rationale in *UPS*, which it claims is analogous. Opp. at 11-12. In *UPS*, the court first concluded that the employees' dispute regarding vacation time had arisen under an earlier collective bargaining agreement. 426 F.3d at 474. It then noted that the dispute must therefore go to the arbitrator as contemplated in the parties' agreement, "unless the agreement negates the presumption of arbitrability expressly or by clear implication." *Id.* *UPS* held as follows: "We find no evidence in these provisions — clear or otherwise — that the parties agreed to depart from the presumption that matters arising under a particular collective bargaining agreement will remain arbitrable even after the contract has terminated." *Id.* This holding, however, has no application to this dispute. Here, CBA 2 contains an integration clause — which was not present in *UPS* — that expressly provides that CBA 2, and not CBA 1, is the agreement that governs the parties' employment relationship. *Id.*; CBA 2 at § 24. Thus, *UPS* is not analogous and Plaintiff cannot rely on it nor CBA 1 for its request to compel arbitration.

With respect to CBA 2, the Court's analysis turns directly to that agreement's Section 25, which outlines the grievance procedure for the parties. Section 25 provides that any "alleged violation of the specific terms of *this Agreement* which cannot be settled informally shall be referred to representatives of the Employer and the Union for settlement." CBA 2 at §25 (emphasis added). Because Plaintiff's 2004 grievances did not arise under CBA 2 — which was not even signed until seven years later in 2011 — this Court cannot find that such grievances arise under "this Agreement" (i.e., CBA 2). *See, e.g.*, *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 663-64 (7th Cir. 2002) (holding that the terms of the arbitration clause in an employment agreement did not apply to another agreement between the parties since the clause specifically stated that it only applied to "any matter in dispute under or relating to *this Agreement*").

Section 25 goes on to provide that "[a]ny other dispute between the parties shall be subject to this grievance procedure [i.e., arbitration] *only by unequivocal written agreement between the*

9

*parties.*" CBA 2 at §25 (emphasis added).  To the extent that Plaintiff argues that CBA 1 constitutes such an "unequivocal written agreement" entitling it to arbitrate the 2004 grievances, this argument is denied.  As the Court explained above, CBA 1 was superseded by CBA 2 and is therefore not applicable.  Plaintiff's allegation that the 2004 grievances were held by the parties "in abeyance" is also not persuasive.  Plaintiff has never pointed to nor alleged that there is an unequivocal written contract reflecting that such an "abeyance" agreement was ever reached between the parties.  Without this written contract, Plaintiff cannot invoke the arbitration procedure of CBA 2.  For these reasons, CBA 2 also does not help Plaintiff in its quest to arbitrate the 2004 no-strike grievances.

## CONCLUSION

Based on the above, Plaintiff is not entitled to arbitrate the 2004 grievances under either CBA 1 or CBA 2.  Defendants' Motion is therefore GRANTED, and Plaintiff's FAC to compel arbitration is DISMISSED WITH PREJUDICE since amendment would be futile.

**IT IS SO ORDERED.**

Dated: November 20, 2012

_____
Maria-Elena James
Chief United States Magistrate Judge